ANDERSON v. MUSGROVE.[*]

(Division B. March 19, 1928.)

[116 So. 73. No. 26829.]

COMPROMISE AND SETTLEMENT. *Mortgagee's failure to reject or ratify proposed settlement after delayed acceptance by mortgagor waived delay and effected binding settlement.*

Where mortgagor delayed in accepting mortgagee's proposition of settlement for approximately eight months, during which time parties corresponded relative thereto, failure of mortgagee after receipt of acceptance to either reject or ratify proposed settlement for a period of ten months thereby waived the lateness of mortgagor's acceptance, and settlement constituted a binding contract.

---

*Corpus Juris-Cyc. References: Compromise and Settlement, 12CJ, p. 321, n. 83.

APPEAL from circuit court of Jasper county, Second district.

HON. H. L. FINCH, Special Judge.

Action by E. E. Anderson, trustee, against B. C. Musgrove. Judgment for defendant, and plaintiff appeals. Affirmed.

*J. A. McFarland* and *Welch & Cooper,* for appellant.

Appellant at the close of the whole case requested the following instructions that was refused: "The court instructs the jury to find for plaintiff and to assess the value of the property at such sum as you may believe from the evidence is the reasonable value thereof." We submit very respectfully that the refusal of this instruction was error. As we have stated no dispute arises over the fact that appellee owed 'Mr. Ford three thousand two hundred sixty-three dollars and nine cents during the year 1923 and that he paid only two thousand eight hundred eighty-three dollars and fifty-nine cents, leaving a balance of four hundred eight dollars and seventy-three cents. Appellee says he had a trade with Ford which operated to settle this balance. The question, therefore, comes to this: Has there ever been a contract of settlement between these parties? Appellee made Ford, two or three days prior to Nov. 9, 1923, an offer to give him twenty bales of cotton in full satisfaction of the note and account. This Ford declined immediately. Two or three days later Ford accepted the offer. Appellee advised him that he had not agreed. As a matter of law appellee was correct. When Ford rejected the offer, the offer no longer existed. It was dead. It died with the rejection. It was no longer available to Ford for acceptance. 13 C. J. 296; *Minneapolis Ry. Co.* v. *Columbus Co.,* 119 U. S. 149, 30 L. Ed. 376; *Shaw* v. *Ingram-Day Lbr. Co.,* 152 Ky. 329, 153 S. W. 431; *Lewis* v. *Johnson,* 123 Minn. 400, 143 N. W. 1127; *Flowerfelt* v. *Hum. Bros.,* 11 Tex. Civ. App. 30, 31 S. W. 679; *Killen* v. *Kennedy,* 90 Minn. 414, 97 N. W. 126; *Davenport* v. *Newton,* 71 Vt. 11, 42 Atl. 1087; *Arthur* v. *Gordon,* 37 Fed. 558; *Spragen* v. *Hosie,* 155 Mich. 30, 118 N. W. 497. We submit therefore, that sending the note marked "credit in full," followed as it was by the refusal of appellee to so accept it was not a settlement of the matter and appellee cannot now avail himself of it. Assume that the act of Ford in sending the note was an offer; still appel-

lee rejected it definitely and the same principle applies.

Ford, then, on February 28, 1924, sent to appellee a document to be signed. Ford made the offer. Appellee one month later flatly and very definitely rejects it. On July 12, however, he signed it and sent it to Ford. Ford then was unwilling to make the settlement. Appellee now relies on this to show no debt under the deed of trust. We submit that this acceptance was then ineffectual for two reasons: First, Ford made the offer. Appellee flatly rejected it. Under the principle above stated, the offer was at an end and could not be accepted without Ford's consent which was denied. Second, appellee waited from February 28, 1924, to July 12, 1924, to accept. We submit that an offer must be accepted within a reasonable time or it expires. 13 C. J. 297; *Minneapolis Ry. Co.* v. *Columbus Co.,* 119 U. S. 149, 30 L. Ed. 376; *Kempnew* v. *Cohn,* 47 Ark. 519, 1 S. W. 869. To permit appellee to flatly refuse an offer and then four and a half months after the offer, and three and a half months after the rejection thereof accept it would be unfair. Particularly where cotton is the commodity being dealt in.

Appellee interposed the two alleged settlements as defenses. No other defense is suggested. And we submit that they were not settlements; that they were not contracts; and that the parties never got their minds together. Consequently Ford is still due more than four hundred dollars on the indebtedness and his trustee is entitled to the possession of the property in order that the security may be availed of.

*G. N. Brown* and *Jeff Collins,* for appellee.

The defendant made the proposition to the mortgagee that he would turn over to him the twenty bales of cotton if the mortgagee would accept it as a settlement in full. The mortgagee accepted the cotton on this kind of a

proposition, and a day or two later sent the defendant his mortgage and deed of trust, marked, "credit in full," and dated November 11, 1923. It is then two months before anything else is done by either party with reference to the matter. The defendant received the mortgage and deed of trust marked "cancelled," together with the mortgagee's letter stating that he was accepting the proposition of the defendant. Therefore, on the 11th of November, 1923, the mortgagee came into possession of twenty bales of cotton on the proposition above stated, and the defendant came into possession of his papers cancelled and marked, "credit in full" and this condition of affairs went on for two months without any dissent from either party. Our contention is that it doesn't make any difference in law what either party afterwards wrote about this settlement. They had actually settled the matter by each receiving from the other everything that was proposed that either should receive. Ford got his twenty bales of cotton on the proposition that he would accept it in full settlement of the account. Musgrove got his deed of trust and note marked "cancelled," which was the only evidence of the indebtedness that Ford had. Each retained, and always have since that time retained, what he received.

On the 28th of Feb., 1924, more than two months after the settlement was consummated as stated above, we find Ford writing a statement to Musgrove. This statement was prepared by Ford himself, and he understood that the transaction on the 10th of Nov., or the 11th of Nov., 1923, was a settlement, because he calls it a settlement himself. Then he states that Musgrove had turned over the twenty bales of cotton to him in full settlement of what was due him. This was just a restatement of what had actually happened, and which the mortgagee himself was stating, and which was afterwards endorsed as a correct statement of what took place on Nov. 10, 1923, by the defendant. The mortgagee and the defend-

ant then clash back and forth by letters to each other until July 12th, each one retaining all that he has received by the agreement of settlement, neither proposing to return anything to the other that he had received on account of the settlement. Even if Musgrove held this statement that he received from Ford on the 28th of Feb., 1924, until the 12th of July, 1924, the statement was still outstanding.

The statement was then returned to Ford and hostilities ceased for more than a year, when they were again renewed by the bringing of this suit by the trustee in the deed of trust. It makes no difference what these parties have said in their letters to each other. They have put down two mileposts which show just where they have arrived. On Nov. 11th, the *status* of each one was changed. This was the first milepost, and on July 12, 1924, they restated the case, each one agreeing as to what happened. This was the second milepost. Neither one proposed to place the other *in statu quo*. Each one has accepted the benefits of the settlement. Therefore, neither can repudiate it.

Appellant's counsel, in his brief, talks a great deal about "offers" and "counter-offers," and about "reasonable time in which to accept offers and counter-offers," but we contend that this law is not applicable to this case because in this case we find each of these parties receiving and accepting the proposition of the other and retaining the possession of it even till now. Under the law can either party repudiate the settlement? Certainly he could not, under any circumstances, repudiate the settlement until he had offered to restore the other party to *statu quo*. On July 12, 1924, when Musgrove returned the statement that Ford had written with his signature to Ford, the duty devolved upon Ford, then and there, to notify Musgrove that he had repudiated any attempts of settlement, and to offer to return to Musgrove his cotton. He does not do this, and for more than

a year the matter goes on without either party saying anything until the suit is brought. Hence, each party is now estopped to deny that there was a settlement of this matter.

Argued orally by *Ellis Cooper,* for appellant, and *Jeff Collins,* for appellee.

ANDERSON, J. Appellant, as trustee in a mortgage executed by appellee to secure an indebtedness due by the latter to J. M. Ford, brought this action of replevin in the circuit court of Jasper county to recover from appellee the possession of certain personal property covered by the mortgage, for the purpose of foreclosure under the mortgage. There was a trial, resulting in a verdict and judgment for the appellee, from which judgment appellant prosecutes this appeal.

The sole question in the case is whether or not the mortgage indebtedness had been paid and the mortgage indebtedness thereby satisfied.

The mortgagee, J. M. Ford, was a merchant at Stringer, in this state. Appellee was a farmer, who, during the year 1923 bought his goods, wares, merchandise, and farm supplies from the mortgagee, Ford. On March 23, 1923, appellee and his wife executed a chattel mortgage to appellee, as trustee, to secure an indebtedness of three thousand one hundred dollars due by appellee to the mortgagee, Ford. The mortgage covered all crops to be raised by appellee during the year 1923, as well as other property, and provided that it should stand as security for any additional indebtedness appellee might incur to Ford during that year. At the end of the year, appellee was indebted to Ford in the sum of three thousand two hundred sixty-three dollars and nine cents, and had turned over to Ford, to be credited on the indebtedness, twenty bales of cotton, which were covered by the mortgage. In the early part of November, 1923, appellee

insisted that Ford accept the twenty bales of cotton in full payment and satisfaction of the mortgage indebtedness. This Ford, at first, declined to do; but, a day or two after the proposition had been made by appellee and declined by Ford, the latter changed his mind, and on November 9, 1923, indorsed on appellee's note, "11/9/23, Credit in full," and sent the note and the mortgage securing the same to appellee in a letter written by him to appellee on that date. In this letter Ford stated that he had changed his mind and had decided to accept the appellee's proposition, and that he was inclosing in the letter appellee's note and mortgage, marked "Paid." Thereupon appellee wrote Ford repudiating the settlement, but did not return to Ford the note and mortgage. Thereafter, on January 5, 1924, Ford wrote appellee expressing surprise at the latter's failure to ratify the settlement. On January 10, 1924, appellee wrote Ford again, stating that there had been no settlement of the mortgage indebtedness between them. Appellee still retained the note and mortgage, saying nothing about their return to Ford. On February 28, 1924, Ford sent to appellee a written acknowledgment, to be signed by the latter, in which it was recited, in substance, that appellee had turned over to Ford twenty bales of cotton, covered by the mortgage, which appellee offered and Ford accepted in full satisfaction of the mortgage indebtedness. This written acknowledgment was not signed by appellee, however, until July 12, 1924. On that date, appellee signed it and returned it to Ford in a letter in which he stated to Ford that he had decided to make the settlement as proposed. But before signing the written acknowledgment of settlement, and on March 28, 1924, appellee had written Ford that he would not sign it. Ford never replied to appellee's letter of July 12, 1924, in which appellee returned to Ford, signed, the written acknowledgment of settlement, but retained the written acknowledgment of settlement. In fact, Ford gave ap-

pellee no notice whatever that he did not consider the mortgage indebtedness between them settled in accordance with the terms of the written acknowledgment inclosed by appellee in his letter to Ford of July 12, 1924, until August, 1925, when Ford had appellant, the trustee in the mortgage, bring this action of replevin to recover a part of the property covered by the mortgage. Ford had credited the twenty bales of cotton to appellee at a certain price, which left something over four hundred dollars due on the mortgage indebtedness.

Appellant contends that the court erred in refusing to direct a verdict in his favor on the undisputed facts. Appellant's position is that appellee waited too long to ratify the settlement proposed by Ford. It will be noted that the proposition by Ford to accept the twenty bales of cotton from appellee in settlement of the mortgage indebtedness was made on November 9, 1923, and was not accepted by the appellee until July 12, 1924. Appellant contends that at that late day appellee was not in a position to make the settlement binding between him and Ford by accepting the latter's proposition; that, under the law, a proposition of compromise and settlement made by one party must be accepted by the other party within a reasonable time after made; otherwise, it will be considered as withdrawn by the proposing party.

We agree with appellant that appellee's acceptance of Ford's proposition of settlement came too late to make such acceptance a binding contract between the parties, but we are of opinion that Ford, by his long silence thereafter waived the lateness of appellee's acceptance. Up to that time the matter of the compromise settlement between them was still open; they had been corresponding about it; their minds had never met, taking what the correspondence shows to be true. We think when Ford received appellee's letter of July 12, 1924, inclosing the written acknowledgment of settlement, signed by appellee, he (Ford) had the duty upon him, within a rea-

sonable time thereafter, to either reject or ratify the proposed compromise settlement and notify the appellee to that effect. As stated, Ford failed to do this for something like ten months or a year, and when such notice was given it was, in the form of the action of replevin in this case.

*Affirmed.*